## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

LISA HEATHER MARTIN,

        Plaintiff,

v.                                   Case No:  2:17-cv-496-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

### <u>REPORT AND RECOMMENDATION</u>[1]

      Plaintiff Lisa Heather Martin seeks judicial review of the denial of her claims for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the Joint Memorandum (Doc. 23),[2] and the applicable law.  For the reasons discussed herein, the Court recommends the decision of the Commissioner be reversed and this matter be remanded pursuant to 42 U.S.C. § 405(g), sentence four.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

[2] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## I.     Issues on Appeal[3]

Plaintiff raises three issues on appeal:[4] (1) whether the administrative law judge ("ALJ") properly weighed the medical opinions of Daniel Johnson, M.D., and Michael Mozzetti, M.D. and declined to incorporate them into the ALJ's assessment of Plaintiff's residual functional capacity ("RFC"); (2) whether the ALJ failed to inquire into and resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); and (3) whether the ALJ erred in failing to allow Plaintiff's attorney to cross-examine the VE regarding the source of the job numbers provided.

## II.     Procedural History and Summary of the ALJ's Decision

On May 16, 2014, Plaintiff filed an application for DIB, alleging her disability began July 21, 2012, due to neck/back problems, "stomach/gastro/colon issues," chronic gastritis, stomach ulcers, gallbladder removal, auto-immune disease, bipolar disorder, clinical depression, and anxiety.   Tr. 89–90, 101, 189.   Plaintiff's DIB claim was denied initially and upon reconsideration.   Tr. 99, 116–119, 123.   On December 31, 2014, Plaintiff requested a hearing before an ALJ.   Tr. 128.   ALJ Elizabeth P. Neuhoff held a hearing on May 31, 2016, during which Plaintiff and VE Melissa Neal testified.   Tr. 37–68.   On August 1, 2016, the ALJ found Plaintiff not disabled through the date of her decision.   Tr. 30–31.

---

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[4] For clarity and judicial efficiency, the Court will discuss Plaintiff's issues in a different order than presented in the Joint Memorandum.

At step one, the ALJ found Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2017." Tr. 16. The ALJ determined Plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 21, 2012. *Id.* Next, the ALJ found that Plaintiff has severe impairments of mild to moderate degenerative disc disease in the cervical and lumbar spine, bipolar disorder, generalized anxiety disorder, and organic mental disorder. *Id.*

The ALJ then concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17. The ALJ then determined that Plaintiff had the RFC to perform light work [5] with certain limitations, including that she "can occasionally stoop and crouch; and frequently perform all other postural activities" and is "able to understand, remember and perform simple tasks and instructions." Tr. 21. Next, the ALJ found Plaintiff was unable to perform her past relevant work as a fast food worker. Tr. 29. Considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff

---

[5] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking and standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

can perform other jobs that exist in significant numbers in the national economy. Tr. 30.   As a result, the ALJ found that Plaintiff is not disabled.   Tr. 30–31.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on July 17, 2017.   Tr. 1.   Accordingly, the August 1, 2016 decision is the final decision of the Commissioner.   Plaintiff filed an appeal with this Court on August 30, 2017.   Doc. 1.   The matter is now ripe for review.

## III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[6]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial

---

[6] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.   *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective March 27, 2017);.   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

evidence supports a decision, we give great deference to the ALJ's factfindings."
*Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation
omitted). Where the Commissioner's decision is supported by substantial evidence,
the district court will affirm, even if the reviewer would have reached a contrary
result as finder of fact or found that the preponderance of the evidence is against the
Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir.
1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v.
Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize
the entire record to determine the reasonableness of the factual findings). The Court
reviews the Commissioner's conclusions of law under a *de novo* standard of review.
*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing
*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

### a. Whether the ALJ properly weighed the medical opinion evidence and declined to incorporate it into the RFC

In evaluating the medical opinions of record, "the ALJ must state with
particularity the weight given to different medical opinions and the reasons therefor."
*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "Medical
opinions are statements from acceptable medical sources that reflect judgments about
the nature and severity of [a claimant's] impairment(s), including [the claimant's]
symptoms, diagnosis and prognosis, what [the claimant] can still do despite
impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §
404.1527(a)(1); *Winschel*, 631 F.3d at 1178–79. When determining how much

weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6).   Although opinions of treating physicians generally are given more weight because they are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time, a medical source opinion may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the record as a whole.  20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).   Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

"A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."

*Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012).   Thus, the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." 20 C.F.R. § 404.1527(d)(3); *see* SSR 96-6p, 1996 WL 374180 (July 2, 1996).   The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments.   *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

### i. Dr. Johnson's opinion

Plaintiff argues that the ALJ erred by misinterpreting Dr. Johnson's range of motion chart, which showed that Plaintiff's cervical and lumbar spine had reduced, rather than normal, ranges.   Doc. 23 at 19.   She contends this limitation prevents her from stooping, which should have been incorporated into her RFC.   *Id.* at 20. Plaintiff also argues the ALJ improperly rejected Dr. Johnson's opinion on the basis that it repeated Plaintiff's own reports because his opinion contained his own

observations, including the difficulty she had getting on and off the examination table. *Id.*

The Commissioner responds Dr. Johnson, who examined Plaintiff one time, observed that she was alert, pleasant and in no distress, had mild difficulties with the examination table, tandem walking, squatting and hopping, but walked unassisted and had full use of her hands, as well as full motor and grip strength, intact sensation and symmetrical reflexes. *Id.* at 25. The Commissioner contends, although Plaintiff has less than full range of motion in the cervical and dorsolumbar regions, the ranges of motion Dr. Johnson observed appeared to be within the normal range. *Id.* The Commissioner argues Dr. Johnson limited Plaintiff to walking and standing for 10 minutes each, sitting for 30 minutes, occasionally lifting 20 pounds, and never performing repeated bending stooping or lifting, yet his examination findings were unremarkable. *Id.* at 26. The Commissioner points out, as the ALJ noted, Dr. Johnson appears to repeat Plaintiff's subjective reports as his findings even though they contradict the benign nature of his examination findings, and such subjective reports do not constitute an acceptable basis for a medical opinion. *Id.* (citing 20 C.F.R. § 404.1527).

As an initial matter, Dr. Johnson's opinion as to Plaintiff's ability to sit, stand, walk, lift, bend and stoop is essentially is an assessment of Plaintiff's ability to work or RFC, and the ALJ was not required to accord any weight to this assessment. *Beegle,* 482 F. App'x at 486. Additionally, although an ALJ generally will give more weight to the opinion of an examining physician over one who has not examined the

claimant, the opinion of a non-treating physician is not entitled to any deference or special consideration.   20 C.F.R. § 404.1527(c)(1); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).   Here, the ALJ gave Dr. Johnson's opinion no weight because he appears to completely repeat Plaintiff's subjective reports as his opinion, and those reports "contradict his own basically benign physical findings." Tr. 25.   The Court recommends substantial evidence supports this conclusion.   *See Phillips*, 357 F.3d at 1240–41 (holding an ALJ may properly discount the opinion of a treating physician if the opinion is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's own medical records).

The five pages of records[7] from one-time examining physician Dr. Johnson contain almost an entire page of information Plaintiff provided, including the limitations that she can stand and walk for 10 minutes each, occasionally lift 20 pounds, and cannot do repeated bending, stooping or lifting.   Tr. 453–57.   Dr. Johnson's listed conclusions mirror this information.   Tr. 457.   Other than observed ranges of motion, which the ALJ noted were limited as to the cervical and dorsolumbar regions, and the mild difficulties getting on and off the examination table and tandem walking, squatting and hopping, Dr. Johnson did not make any observations or independent findings that would support the stated functional limitations.   Tr. 25, 453–457.

---

[7] There is also a billing invoice and a copy of Plaintiff's driver's license that the Court did not count in this total.   Tr. 452, 458.

Although Plaintiff argues the ALJ misread Dr. Johnson's notes as to her ranges of motion, the ALJ recognized the ranges were less than full.   Doc. 23 at 19–20, Tr. 25.   It does appear Plaintiff is correct that the ALJ may have misinterpreted Dr. Johnson's range of motion studies because the meaning of "normal" is unclear.   Tr. 455–56.   These ranges do not seem like typical ranges in the sense that anything falling within them would qualify as normal.   Instead, the ranges seem to be the full ranges of motion for each joint.   *Id.*   Nevertheless, Plaintiff does not suggest the effect this misinterpretation would have on the ALJ's determination of her ability to bend and stoop.   The ALJ recognized the deficiency in Plaintiff's ranges of motion in the cervical and dorsolumbar spine and accounted for it in RFC finding by limiting Plaintiff to occasionally stooping and crouching.   Tr. 21, 25, 455.   The ALJ declined to reduce Plaintiff's RFC any further because the objective examinations and/or diagnostic testing did not support it, and the evidence showed her activities were not as limited as one would expect given her claimed symptoms and limitations.[8]   Tr. 23, 28–29.   Thus, the Court recommends substantial evidence supports the ALJ's rejection of Dr. Johnson's opinion.

### ii.   Dr. Mozzetti's opinion

Dr. Michael Mozzetti treated Plaintiff for neck and back pain from August 2014 until April 2016.   Tr. 458–508.   His treatment notes from each visit during that period—from her first visit to her last—contain the following work restrictions:   "20

---

[8] Plaintiff does not challenge the ALJ's credibility findings; thus, this issue is waived.   *Access Now*, 385 F.3d at 1330.

lb occasional lift limit, wear a high quality back brace and if available, apply ice 4 times a day; avoid bending, stopping or craning your back."   Tr. 460, 465, 470, 475, 481, 484, 487, 490, 494, 498, 502.

Plaintiff argues the ALJ erred in rejecting Dr. Mozzetti's opinion that she had these work restrictions as unsupported by his notes or the record as a whole.   Doc. 23 at 20.   She argues these work restrictions were supported by: (1) treatment notes indicating Plaintiff has lumbar tenderness; (2) Dr. Johnson's findings indicating range of motion limitations; and (3) the MRI showing multilevel formation narrowings and nerve root contact.   *Id.* at 20–21.   Plaintiff further argues Dr. Mozzetti's indication that Plaintiff needs to apply ice 4 times a day and avoid heat on her back is more than opinion—it is a modality of treatment the ALJ was not qualified to reject as a non-physician.   *Id.* at 21.   Plaintiff points to her testimony as consistent with this treatment, and she points to the VE's testimony that the need for breaks to apply ice would preclude work.   *Id.* at 22.

The Commissioner responds that on examination, Dr. Mozzetti found Plaintiff generally unremarkable other than lumbar tenderness, and his records indicate Plaintiff often reported doing well, having no problems, and experiencing a pain level of 3–4 out of 10.   Doc. 23 at 24.   Given these notes do not support Dr. Mozzetti's work restrictions, the Commissioner argues, they provide substantial evidence supporting the ALJ's rejection of the additional restrictions.   *Id.*   The Commissioner discounts Plaintiff's argument that the application of ice is a modality

of treatment, arguing that the ALJ was properly determining Plaintiff's RFC and evaluating Dr. Mozzetti's opinion to do so.   *Id.* at 25.

The ALJ recognized Dr. Mozzetti was Plaintiff's treating physician for the majority of the relevant period but determined his opinion was entitled to no weight because it was inconsistent with the record as a whole and unsupported by his examination findings or Plaintiff's symptoms upon presentation.   Tr. 24.   Plaintiff saw Dr. Mozzetti for back and neck pain, but the ALJ found his examinations do not support the numerous limitations Plaintiff claims.   *Id.*   Specifically, there was a negative response to straight leg raise testing, full range of motion in Plaintiff's extremities, and normal motor strength and sensation.   *Id.*   The ALJ found Dr. Mozzetti's prescription of pain medication inconsistent with Plaintiff's routine reports of low pain levels, consistently a 3 or 4 out of 10, and her reports that she was doing well and having no problems.   *Id.*   The ALJ found Dr. Mozzetti's observations and Plaintiff's reports to him inconsistent with the work restrictions limiting lifting to 20 pounds occasionally, requiring a back brace and, if available, application of ice 4 times daily, and avoiding bending and stooping or craning the back.   *Id.*

The Court recommends the ALJ adequately articulated specific reasons for discounting Dr. Mozzetti's opinions, and the record reflects good cause for doing so. *See e.g.*, *Crawford*, 363 F.3d at 1155; *Phillips v. Barnhart*, 357 F.3d at 1241.   The ALJ "may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted).   Although Plaintiff points to her MRI to support the limitations Dr. Mozzetti found, Doc. 23 at

20, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one. *Parks v. Comm'r, Soc. Sec. Admin.*, 783 F. 3d 847, 850 (11th Cir. 2015); *see also Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.   The ALJ recognized Plaintiff's MRI in precluding her from medium work, but declined to find greater limitations based on the record. Tr. 24, 28.

In her visits with Dr. Mozzetti from August 2014 to April 2016, Plaintiff consistently reported she was feeling well, had no problems, questions or complaints, and her pain with medication was at most a 3 or 4 out of 10.   Tr. 459–60, 463–65, 468–70, 473–75, 478–80, 482–83, 485–86, 488–89, 492–93, 496–97, 500–01.   Her straight leg raise tests were always negative.   Tr. 460, 465, 470, 475, 480, 483, 486, 489, 493, 497, 501.   Dr. Mozzetti generally found Plaintiff's various systems unremarkable except for lumbar tenderness.   Tr. 460, 469, 474, 480 486, 489, 493, 497, 501.   Yet Dr. Mozzetti consistently listed Plaintiff's work restrictions as wearing a high back brace, applying ice 4 times a day, if available, limited to occasionally lifting 20 pounds, and avoiding bending, stooping, or craning Plaintiff's back.   Tr. 460, 465, 470, 475, 481, 484, 487, 490, 494, 498, 502.   These restrictions were identical for every time Plaintiff saw Dr. Mozzetti over an almost two-year period.   The ALJ's conclusion—that these restrictions given throughout Dr. Mozzetti's treatment of Plaintiff were inconsistent with her continuous presentation of minimal pain and Dr. Mozzetti's largely normal findings on examination—was a reasonable one.   *See Lewis*, 125 F.3d at 1440 (explaining good cause to discount

opinion exists "where the doctors' opinions were conclusory or inconsistent with their own medical records"). Additionally, Dr. Mozzetti's opinion as to Plaintiff's work restrictions is not entitled to any special significance because it relates to Plaintiff's RFC, which is a matter reserved to the Commissioner. *Beegle,* 482 F. App'x at 486; 20 C.F.R. § 404.1527(d)(3). Thus, the Court recommends substantial evidence and good cause support the ALJ's decision to give no weight Dr. Mozzetti's opinion as to her work restrictions, both because it was an RFC finding and because it was rendered in the absence of either high pain levels or abnormal examination findings to support it.

### b. Whether the ALJ erred at Step Five

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy the claimant can perform given his RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). When a claimant, such as here, cannot perform the full range of work at a given exertional level or has non-exertional impairments that significantly limit his basic work skills, an ALJ may rely solely on the testimony of a VE. *Jones*, 190 F.3d at 1230; *Foote*, 67 F.3d at 1559; 20 C.F.R. § 404.1566. A VE's testimony will constitute substantial evidence if the ALJ's hypothetical question includes all of a claimant's functional limitations. *Jones*, 190 F.3d at 1229. "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted).

While an ALJ's hypothetical question must take into account all of a claimant's impairments, *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record.   *Crawford*, 363 F.3d at 1161.

### i. *Whether the ALJ properly resolved a conflict between the VE's testimony and the DOT*

Plaintiff argues the ALJ was misinformed as to whether the VE's testimony was consistent with the DOT because the ALJ limited Plaintiff to simple, repetitive work, yet the VE identified jobs with a reasoning level of 2 that he could perform. Doc. 23 at 28–31.   Plaintiff further contends the ALJ failed to develop the record by not asking the VE for a reasonable explanation of the apparent conflict and instead erroneously relying on the VE's testimony that no conflict existed.   *Id.* at 31. Plaintiff argues that a reasoning level 2, which requires the ability to carry out detailed written or oral instructions, is inconsistent with the ability to understand and carry out simple instructions.   *Id.* at 30.   The Commissioner responds that while the jobs have a reasoning level of 2, they also have a specific vocational level ("SVP") level of 2, which corresponds to unskilled work.   *Id.* at 32–33.

The Court recommends the ALJ properly relied on the VE's testimony after asking the VE if his testimony was consistent with the DOT.   Under SSR 00-4p, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."   SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).   If there is a conflict, the ALJ is to "obtain a

reasonable explanation for the apparent conflict." *Id.* If the ALJ asks the VE whether any conflicts exist between the DOT and the VE's statements, and the VE responds in the negative, "the ALJ is not required independently to identify whether there is any inconsistency." *Cousins v. Colvin*, No. 2:12-cv-505-FtM-29, 2013 WL 5278271, at *6 (M.D. Fla. Aug. 23, 2013), *report and recommendation adopted as modified*, No. 2:12-cv-505-FtM-29DNF, 2013 WL 5278483 (M.D. Fla. Sept. 18, 2013). This is especially true in cases where the claimant does not identify any conflicts at the hearing through questioning the VE, despite being represented by counsel. *See Garskof v. Astrue*, No. 5:07-cv-288-Oc-GRJ, 2008 WL 4405050, at *6 (M.D. Fla. Sept. 26, 2008); *see also Dickson v. Comm'r of Soc. Sec.*, No. 5:13-cv-48-OC-DNF, 2014 WL 582885, at *1 (M.D. Fla. Feb. 13, 2014) ("No conflicts were raised during the hearing by the vocational expert or by Plaintiff's representative. Neither case law nor SSR 00–4p require an ALJ to resolve a conflict that was not identified and was not otherwise apparent.").

Here, the VE testified that her testimony was consistent with the DOT, except to the extent the DOT did not describe being off task or needing breaks. Tr. 63. Plaintiff's attorney presented the VE with additional hypotheticals and acknowledged in questioning that the work identified was unskilled but did not ask or attempt to ask any questions regarding a potential conflict between the DOT's testimony and the VE. Tr. 64. The ALJ was not under an independent obligation to identify and resolve any inconsistency aside from those identified by the VE. *See Dickson*, 2014 WL 582885, at *5; *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975

(11th Cir. 2012).   Thus, there was nothing to indicate to the ALJ that there was a conflict to address.   *See Garskof,* 2008 WL 4405050, at \*6; *see also Dickson,* 2014 WL 582885, at \*5.

Indeed, courts in this circuit have held that a required reasoning level of 2 or 3 is not inconsistent with the ability to perform simple tasks as long as those jobs have an SVP[9] level of two, which correlates to unskilled work.   *Chambers v. Comm'r of Soc. Sec.,* 662 F. App'x 869, 873 (11th Cir. 2016); *Hurtado v. Astrue,* Case No. 09-60930-CIV, 2010 WL 1850261, at \*12 (S.D. Fla. Apr. 14, 2010); *Hobbs v. Colvin,* No. 8:13-cv-3233-T-24 MAP, 2015 WL 628763, at \*5 (M.D. Fla. Feb. 12, 2015) (citation omitted); *Miller v. Comm'r of Soc. Sec.,* 246 F. App'x 660, 661–62 (11th Cir. 2007); *Gray v. Colvin,* No. 3:12-cv-506/EMT, 2014 WL 1118105, at \*8 (N.D. Fla. Mar. 20, 2014)).   All three of the jobs the VE identified Plaintiff could perform have an SVP of 2.   Tr. 30, 63.   SSR 00-4p provides that unskilled work corresponds to an SVP of 1 or 2 in the DOT.   *See SSR 00-4p, 2000 WL 1898704, at \*3.*   Unskilled work requires "little or no judgment to do simple duties." 20 C.F.R. § 404.1568(a).   Thus, these positions do not exceed Plaintiff's mental limitations in the RFC to perform simple, routine, repetitive work.   Tr. 21.   Because there was no inconsistency between the VE's opinion and the DOT, the Court recommends the ALJ's decision is supported by substantial evidence in this regard.   Nevertheless, because the Court

---

[9] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."   SSR 00–4p, 2000 WL 1898704 at \*3.

recommends remands on other grounds discussed below, the Commissioner may reexamine this issue on remand or permit additional questioning of the VE as it relates to any conflict between her opinion and the DOT.

    *ii.   Whether the ALJ erred in failing to allow Plaintiff's attorney to cross-examine the VE regarding the job numbers provided*

Plaintiff argues her due process rights were violated and she was denied the right to a full hearing when the ALJ refused to allow her attorney to question the VE regarding the source of her job numbers. Doc. 23 at 7–11. The Commissioner responds cross-examination is discretionary. *Id.* at 15. She further argues even if the ALJ erred in preventing cross-examination, Plaintiff has failed to show prejudice because the VE is permitted to rely on the DOT a well as her experience and expertise in the area of job placement. *Id.* at 15–16. The Commissioner argues Plaintiff has not shown the VE's job numbers were inaccurate or insignificant in the national economy such that "a remand of Plaintiff's case to the Commissioner for him to further cross-examine the VE would serve no practical purpose and would be a waste of judicial resources." *Id.* at 16–17.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "It is indisputable that the ability to cross-examine witnesses is fundamental to due process." *Marin v. Comm'r of Soc. Sec.*, 535 F. Supp. 2d 1263, 1265 (M.D. Fla. 2008). The Administrative Procedures Act provides for the right to cross-examination. *Id.* at 1265 n.4 (citing 5 U.S.C § 556(d)). However, this right is not absolute in administrative cases. *Cent. Freight Lines, Inc. v. United States*, 669

F.2d 1063, 1068 (5th Cir. 1982).   Specifically, a claimant is entitled "to conduct such cross-examination as may be required for a full and true disclosure of the facts."   5 U.S.C. § 556(d); *see also* 20 C.F.R. § 404.950(e) ("The [ALJ] may ask the witness any questions material to the issues and will allow the parties or their designated representatives to do so."); 20 C.F.R. § 404.916(b)(4) ("[The claimant] may present witnesses and question any witnesses at the hearing.").   The ALJ has the discretion to determine whether cross-examination is warranted.   *Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 962 (11th Cir. 2016) (citing *Demenech v. Sec'y of Dep't of HHS*, 913 F.2d 882, 884 (11th Cir. 1990)); *see also Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988).

After completing her questioning of the VE, the ALJ asked Plaintiff's attorney if he had "any sets of limitations for our Vocational Expert." Tr. 63–64.   The attorney asked the VE about three additional limitations and then attempted to further question the VE:

| | |
|---|---|
| ATTY: | Okay.   Those are the only hypotheticals that I would have for her, Judge.   I would say that it is relevant - - |
| ALJ: | Okay. |
| ATTY: | - - to ask what her job numbers are because the regulations permit administrative notice of only certain sources.   And I think that in order for the Agency to meet its Step 5 burden, it certainly needs to be verified that the evidence that we're talking about today comes from those administratively permitted sources. |
| ALJ: | Well we're not going to go there, Mr. Beecher.   That's - - this is not the forum to be bringing up that type of questioning.   At issue today is just determine whether or not Ms. Martin qualifies for disability - - |
| ATTY: | Right. |
| ALJ: | - - under the rules and regulations. |

| | |
|---|---|
| ATTY: | But what - - then the Agency must establish at Step 5 that she can perform other work which exists in significant numbers in the national economy.   And to do that it relies on certain administrative sources.   So we need to know that the Vocational Expert is relying on those sources. |
| ALJ: | Well let me just ask Ms. Neal then.   Is your testimony also based, just not only in part upon the DOT, but upon your experience and expertise in the area of job placement - - |
| VE: | Yes, Your Honor. |
| ALJ: | - - job analysis?   All right.   Thank you. |
| ATTY: | Object - - |
| ALJ: | Mr. Beecher, I find that's [sic] she already qualified and capable of presenting us with - - |
| ATTY: | I'm not objecting to her qualifications in this regard.   I'm saying that in order for the Agency to meet its Step 5 burden, we need to establish that her numbers come from administratively permitted sources.   And the regulations have a very clear cut list of what those sources are. |
| ALJ: | Okay. Mr. Beecher, we're not going to go there.   If you want to address this in a post-hearing briefly [sic], I'll hold the record open anyway until June 14th, you're more than welcome to do that.    But at this time, I'm going to go ahead and turn it over to Ms. Martin. |
| ATTY: | Judge, I can't. |
| ALJ: | We're not going to go there. |
| ATTY: | I can't address it in a post-hearing brief if we don't have testimony from the Vocational Expert about the sources for her numbers.   If she's going to respond - - |
| ALJ: | She's already testified. |
| ATTY: | Okay.   Well then is she going to respond to interrogatories about the source parameters? |
| ALJ: | If you want to pay for those interrogatories, you're more than welcome to send her interrogatories. |
| ATTY: | Judge, the Agency is - - |
| ALJ: | This office is not going (INAUDIBLE) for those. |
| ATTY: | But then why not - - |
| ALJ: | (INAUDIBLE) that's it. |
| ATTY: | Then why not ask for the five questions now? |
| ALJ: | No.   I'm sorry.   If you do not want to maybe finish up this hearing with Ms. Martin, I'm going to have to ask you to leave. |
| ATTY: | Judge - - |
| ALJ: | And I'll finish this up with Ms. Martin by myself. |

ATTY:      When is the forum in which we can question a Vocational Expert about her job numbers?   If this goes on to appeal, it's relevant to later decision-making agencies what the source of the job numbers was.   Again, that - -

ALJ:      You can (INAUDIBLE) you are allowed to.

ATTY:      But I can't do that if we don't ask her now what the sources are.

Tr. 65–67.   The ALJ then spoke to Plaintiff and ended the hearing.   Tr. 67–68.

There is no dispute that Plaintiff's attorney was prevented from fully cross-examining the VE.   *See* Doc. 23 at 15–17.   As in *Marin*, the ALJ limited Plaintiff's attorney to questioning the VE with hypotheticals.   *Marin*, 535 F. Supp. 2d at 1264. While the ALJ may have permissibly restricted the length and scope of Plaintiff's attorney's questioning of the VE, the Court recommends preventing any cross-examination of the VE whatsoever regarding her conclusions as to the source of her job numbers was an error.   *Id.* at 1265 ("The ALJ's decision to restrict cross-examination of the vocational expert witness to hypothetical questions was arbitrary and prevented Marin's counsel from conducting a meaningful cross-examination.").

Having recommended that the ALJ erred, the Court turns next to whether that error was a prejudicial one.   "[T]here must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal citation omitted).   "[The] claimant cannot show prejudice by speculating that she would have benefitted from a more comprehensive hearing."   *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 593, 599 (11th Cir. 2016) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).

Instead, prejudice is shown when "the ALJ did not have all the relevant evidence before him or did not consider the evidence in reaching his decision." *Id.* (citing *Kelley*, 761 F.2d at 1540).

The Court recommends Plaintiff has shown prejudice because she was completely unable to question the VE about the source of the job numbers. For example, Plaintiff would have questioned whether the VE utilized numbers from broad groups rather than numbers limited to the specific occupations someone with Plaintiff's RFC, age, education, and experience could perform. Tr. 281. If the numbers should have been reduced, the VE would have had to explain how she was able to reduce those numbers, and the ALJ would have determined whether those numbers were reliable and significant in the national economy. *See Lynch v. Astrue*, 358 F. App'x 83, 88 (11th Cir. 2009). In *Lynch*, the court explained:

> In order for the VE's testimony to constitute substantial evidence upon which the ALJ may rely, it would have been helpful to allow the VE to articulate the basis for her conclusion that there are 300 or 1,000 jobs existing in the national economy that Lynch can perform given Lynch's functional limitations. In the absence of such an explanation, we are without "relevant evidence that a reasonable mind might accept as adequate support" the conclusion that there are other jobs that Lynch is able to perform.

*Lynch*, 358 F. App'x at 88 (quoting *Perales*, 402 U.S. at 401). Moreover, as the ALJ relied on the VE's testimony, it was prejudicial for her credibility to go untested. Plaintiff's attorney should have been able to question the VE and use her answers and any inability to provide answers to challenge the reliability of her testimony. *Marin*, 535 F. Supp. 2d at 1265.

Although the Commissioner may ultimately reach the same conclusion, the Court recommends the absence of any cross-examination of the VE beyond hypotheticals left an evidentiary gap with respect to the source of VE's testimony. The ALJ's decision to prevent questioning of the VE about the source of her job numbers was therefore prejudicial and requires remand. *Cf. Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 403 (11th Cir. 2012) ("Although the ALJ did instruct her attorney to move along, Pena's attorney fully elicited the sources and the methodology the VE had utilized in arriving at the available employment figures to which he testified. Thus, the ALJ had a full and fair record of the bases for the VE's opinion and sufficient information to evaluate their reliability.").[10]

### III.   Conclusion

The Court recommends the ALJ erred in preventing Plaintiff's representative from fully cross-examining the VE, resulting in prejudice to Plaintiff, such that substantial evidence does not support the ALJ's finding that Plaintiff could adjust to other jobs that exist in significant numbers in the national economy.   Therefore, the Court recommends reversal and remand.

---

[10] The Court notes that the ALJ appeared to conclude that Plaintiff's representative presented an argument as to the source of the number of jobs only as the VE reduced those numbers in relation to one of the additional hypotheticals about which Plaintiff's representative asked her.   Tr. 13–14.   The ALJ did not adopt the limitation presented in this additional hypothetical in her RFC finding and therefore concluded the argument was immaterial.   Tr. 14.   Upon review of the transcript, however, Plaintiff's representative was attempting to question the VE as to the source of all the job numbers she referenced in her testimony.   Tr. 65–67.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1. The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

> A.    Permit questioning of the vocational expert regarding the source of the number of jobs in the national economy a person with Plaintiff's limitations could perform; and
>
> B.    Make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2.    The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of Plaintiff Lisa Heather Martin, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 29th day of June, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record